# IN THE UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF MISSOURI
## WESTERN DVISION

| | |
|---|---|
| IN RE:　)　<br>　)　<br>CAROL LINDA DILLE　)　<br>　)　<br>　　　Defendant.　)　<br>----------------------------------------------------------)　<br>DANIEL J. CASAMATTA, in his official　)　<br>capacity as ACTING UNITED STATES　)　<br>TRUSTEE,　)　<br>　)　<br>　　　Plaintiff,　)　<br>　)　<br>v.　)　<br>　)　<br>CAROL LINDA DILLE,　)　<br>　)　<br>　　　Defendant.　)　<br>----------------------------------------------------------)　 | Case No. 18-42994-DRD7<br><br><br><br><br><br><br><br><br><br>Adv. Case No. _____-DRD |

## UNITED STATES TRUSTEE'S COMPLAINT AND OBJECTION TO DISCHARGE PURSUANT TO SECTION 727(a)

Now comes the United States Trustee, by and through his counsel of record, and objects to the discharge of Carole Linda Dille (the "Debtor" or "Defendant") in Chapter 7 pursuant to 11 U.S.C. § 727(a) and further objects to the Defendant's pending Chapter 13 Plan for the following reasons:

*Procedural History*

1. On November 20, 2018, Defendant commenced this case by filing a voluntary petition for relief pursuant to the provisions of Chapter 13 of Title 11, United States Code (the "Bankruptcy Code"). The bankruptcy case was filed in the Western District of Missouri, Western Division and assigned case number 18-42294 (the "Bankruptcy Case").

2. On December 5, 2018, the Defendant filed certain Schedules A/B-J (the "Initial Bankruptcy Schedules"), and a Statement of Financial Affairs (the "SOFA") in the Bankruptcy Case, which were accompanied by a declaration executed by the Defendant attesting under penalty of perjury to their accuracy.

3. On February 26, 2019, the Defendant testified under oath at a meeting of creditors pursuant to Section 341(a) of the Bankruptcy Code before Dana Estes, who was the duly appointed designee of the Chapter 13 Trustee, Richard V. Fink.

4. On September 17, 2019, the Defendant filed an Amended Schedule A in the Bankruptcy Case, which was accompanied by a declaration executed by the Defendant attesting under penalty of perjury to its accuracy.

5. On March 18, 2020, the United States Trustee filed a motion to convert the Bankruptcy Case from Chapter 13 to Chapter 7 under Section 1307(c) of the Bankruptcy Code.

6. The Defendant was deposed by counsel for the United States Trustee and counsel for creditor Sasha Investments on June 24, 2020 and July 2, 2020.

7. The Bankruptcy Court held a combined hearing on the United States Trustee's motion to convert as well as confirmation of the Defendant's Chapter 13 plan on August 26, 2020 following which the parties submitted post-trial briefs.

8. On October 5, 2020, the Bankruptcy Court held a hearing in which it made its findings of fact and conclusions of law regarding the motion to convert and the confirmation hearing on the plan. For the reasons stated on the record, the Bankruptcy Court denied confirmation of the Defendant's plan and ordered the case converted to Chapter 7.

9. Subsequent to conversion to Chapter 7, Victor F. Weber was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee").

10. The Defendant testified under oath at a meeting of creditors before the Chapter 7 Trustee on November 4, 2020.

*Jurisdiction, Standing and Parties*

11. The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a).

12. This Bankruptcy Court has authority to hear this matter under an order of reference from the United States District Court for the Western District of Missouri promulgated pursuant to 28 U.S.C. § 151.

13. Venue for this proceeding is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1408 as the Defendant resides in and has principal assets in the Western District of Missouri and a pending main bankruptcy case exists in the Western District of Missouri.

14. This is a constitutionally core proceeding, and a statutorily core proceeding under 28 U.S.C. § 152(b)(2)(J) to which this Bankruptcy Court may render a final decision.

15. To the extent that the Defendant asserts that this matter is not either constitutionally or statutorily core and the court so finds, the United States Trustee consents to the jurisdiction of the Bankruptcy Court to enter a final ruling on the merits disposing of the claims in this proceeding.

16. The Plaintiff is the duly appointed Acting United States Trustee for Region 13 (which encompasses the Western District of Missouri) pursuant to 28 U.S.C. §§ 581(a)(13) and 585(a).

17. The Plaintiff has standing to bring this proceeding pursuant to Sections 727(c)(1) and 307 of the Bankruptcy Code.

18. The Defendant is the Debtor in the Bankruptcy Case and has consented to the jurisdiction of this court by voluntarily filing the Bankruptcy Case in the United States Bankruptcy Court for the Western District of Missouri.

19. This proceeding is timely filed pursuant to Fed. R. Bankr. P. 4004(a).

### *Relevant Factual Allegations*

20. The Defendant entered a plea of guilty to two federal felony counts on January 31, 2020, before the Honorable Howard F. Sachs, Senior United States District Judge, in connection with the case styled *United States v. Carol L. Dille,* Case No. 19-cr-00087 now pending in the United States District Court for the Western District of Missouri. Specifically, she pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, in connection with making false claims for her estranged spouse's social security income; and, one count of bankruptcy fraud in violation of 18 U.S.C. § 152, in connection with making false statements in a prior bankruptcy proceeding filed in this Court.[1] A copy of the plea agreement was attached to the United States Trustee's motion to convert as *Exhibit 1* and is incorporated by reference.

21. The Defendant was sentenced by the District Court before the Honorable David Gregory Kays on November 6, 2020 to twenty-four months of incarceration, followed by thirty-six months of supervised release, restitution and a mandatory special assessment.

---

[1] As is more described herein, the Defendant admitted that in a prior case, she failed to disclose a bank account held in the name of the Alliance of Divine Love Chapel 1202 over which she exercised sole control, and for which she used for personal as well as alleged business transactions.

A. *The Alliance of Divine Love Chapter 1202*

22. The Alliance of Divine Love ("ADL") is an interfaith ministry that "trains and supports ministers to counsel, heal, teach and contribute to those in need and those seeking to awaken to their higher consciousness as they are divinely guided." *See https://www.allianceofdivinelove.org/* (last visited July 25, 2020).

23. The ADL is headquartered in Flat Rock, N.C. and is a registered Section 501(c)(3) charitable organization with the Internal Revenue Service.

24. The ADL offers a ministerial program with the goal of ordaining ministers.

25. The Defendant has been an ordained minister of the ADL since at least 2000.

26. Sometime after her ordination, the ADL granted the Defendant permission to establish an ADL chapter in Kansas City, number 1202 (the "ADL Chapter 1202").

27. The Defendant obtained a tax identification number for the ADL Chapter 1202 with the Internal Revenue Service but did not separately seek to establish the ADL Chapter 1202 as a tax-exempt charitable entity under Section 501(c)(3).

28. Nevertheless, the Defendant asserts that she relied on ADL's status as a Section 501(c)(3) entity and has never filed tax returns or any financial returns with the Internal Revenue Service for the ADL Chapter 1202.

29. The Defendant first registered the ADL Chapter 1202 with the Missouri Secretary of State as a nonprofit corporation on January 16, 2004. The corporation was assigned registration number N00562913. The Defendant was the registered agent for ADL Chapter 1202 and signed the registration paperwork filed on January 16, 2004.

30. Registration number N00562913 was administratively dissolved and a windup order was issued on December 29, 2006.

31. The Defendant re-registered ADL Chapter 1202 with the Missouri Secretary of State as a nonprofit corporation on January 29, 2012, approximately five years after it was previously dissolved. The corporation was assigned registration number N01208527.

32. Registration N01208527 was administratively dissolved and a windup order was issued on December 18, 2013.

33. The Defendant took no affirmative steps to reinstate ADL Chapter 1202's corporate charter prior to the filing of these contested matters in March, 2020.

34. Despite the fact that ADL Chapter 1202 has been twice dissolved by the Secretary of State of Missouri, and the Defendant's clear and admitted knowledge of the dissolution and windup orders, the Defendant has continued to do business in the name of ADL Chapter 1202 since its administrative dissolution, contrary to the windup order.

35. The Defendant has maintained a bank account at UMB in the name of ADL Chapter 1202 since at least 2014. The Defendant is the sole signatory on the account at UMB.

36. There are no other members of the board of directors or officers of ADL Chapter 1202 except for the Defendant.

37. ADL Chapter 1202 is an alter ego of the Defendant, and since at least 2015, the Defendant has used the UMB bank account held in the name of ADL Chapter 1202 for substantially all of the Defendant's banking transactions, both personal and allegedly business related.

38. Accordingly, ADL Chapter 1202 is an alter ego of the Defendant.

B.  *The Dille Family Revocable Trust*

39. The Dille Family Revocable Trust dated October 30, 2008 (the "Dille Family Trust") was created by the Defendant's mother Catherine Jane Dille, who was the grantor.

40. The Dille Family Trust instrument specifies that it is a spendthrift trust for the benefit of the grantor, the Defendant, and the Defendant's brother.

41. The trustee of the Dille Family Trust was Loren G. Rea.

42. The Dille Family Trust instrument specifies that the only property in the trust was 4605 Liberty Street, Kansas City, Missouri 64112 ("4605 Liberty").

43. Article III of the Dille Family Trust provides that the trustee was to distribute all property of the trust upon the death of Catherine Dille.

44. The Dille Family Trust contained a spendthrift provision in Article IV, paragraph B.

45. Catherine Dille died in May, 2011.

46. At the time of Catherine Dille's death, the only real property in the trust was 4605 Liberty.

47. No provision of the trust appears to permit the trust to acquire additional real property after the death of the grantor.

48. On March 30, 2014, the trustee distributed 4605 Liberty to the Defendant and her brother by a Trustee's Deed of Distribution. However, for unknown reasons, the deed was not recorded in Jackson County, Missouri until April 1, 2016.

49. At the time of the distribution on March 30, 2014 of the 4605 Liberty property, the Dille Family Trust dissolved as a matter of law.

C. *The Sale of the California Property and the Disposition of Proceeds*

50. Prior to August, 2016, the Defendant owned real estate at 2417 Graham Avenue in Redondo Beach, California. (the "California Property"). Further, the Redondo property was jointly owned with the Defendant's estranged spouse, Gerald A. Sanders.

51. The Defendant sold the California Property for a total sale price of $725,000 on or about August 10, 2016.

52. On August 10, 2016 the Defendant received a wire transfer consisting of proceeds from the sale of the California property totaling approximately $355,525.12. The proceeds were wired into the UMB bank held in the name of ADL Chapter 1202 (the "UMB ADL account").

53. The Defendant did not share the proceeds with her then estranged spouse.

54. Despite Mr. Sanders' demand for payment, the Defendant has not paid him any proceeds.

55. Between August 12, 2016 and August 16, 2016, the Defendant withdrew the sum of $30,000 in cash from the UMB ADL account.

56. On or about September 21, 2016, the Defendant received a wire transfer into the UMB ADL account in the amount of $27,346.78. Upon information and belief, these funds resulted from the final settlement of the escrow related to the sale of the California Property.

57. On October 11, 2016, the Defendant withdrew $250,000.00 from the UMB ADL account in cash.

58. The Defendant testified under oath that she placed the $250,000 in a freezer located at 22nd Street and Brooklyn in Kansas City, Missouri that she was using a temporary location for the ADL Chapter 1202.

D. *The Transfer of the Kansas City Properties*

59. For many years, the Defendant has owned at least one half of the properties at 4933 Westwood Road ("4933 Westwood") in Kansas City, Missouri and 4937 Westwood Road in Kansas City Missouri ("4937 Westwood").

60. The 4937 Westwood property, the legal description of which is Lot 33 of the Westwood Park subdivision in Kansas City, was obtained by the Defendant in 1980.

61. The 4933 Westwood property, the legal description of which is Lot 34 of the Westwood Park subdivision in Kansas City, was obtained by the Defendant in 2005.

62. The 4937 Westwood property has been the subject of lengthy and significant litigation which has been reported on numerous local media outlets in Kansas City, including the Kansas City Star newspaper.

63. In 2013, the Westwood Homes Association commenced a state court action in the Circuit Court of Jackson County, asserting that the Defendant had permitted 4937 Westwood to become a public nuisance through failing to maintain the property in good condition.

64. Following a four-day bench trial, the Circuit Court entered partial judgment for the Westwood Home Association and appointed a receiver on October 31, 2014.

65. Following the conclusion of the bench trial but prior to the entry of the Circuit Court's judgment, the Defendant purported to transfer 4937 Westwood to the Dille Family Trust by quit claim dated October 20, 2014, and which was recorded by the Jackson County Recorder of Deed the same day as document 2014E0087203.

66. Nevertheless, the receiver abated the nuisance at 4937 Westwood, at the cost of approximately $185,000.

67. In June, 2017, the Defendant redeemed the 4937 Westwood property by paying the costs of the abatement and receivership action.

68. The Defendant paid approximately $85,000 in cash towards the redemption from the cash located in the freezer at 22nd and Brooklyn, which had been withdrawn from the UMB

ADL Account and which represented traceable proceeds from the sale of the California Property.

69. To finance the remainder of the redemption, the Defendant obtained a loan from Sasha Investments for $101,000.

70. As collateral for the $101,000 loan, the Defendant executed a deed of trust in favor of Sasha Investments on the 4937 Westwood property. The Defendant also executed a deed of trust in favor of Sasha Investments secured by the property described as Lot 117 in Oakshire, 3rd Plat in Johnson County, Missouri, the purchase of which is described below, as collateral for this loan.

71. Further, on December 15, 2014, the Defendant executed a quit claim deed purporting to transfer the property at 4933 Westwood to the Dille Family Trust. The document was recorded with the Jackson County Recorder of Deed on December 16, 2014 at instrument number 2014E0104168. [2]

E.   *The Purchase and Transfer of the Bates City Property, and Related Debts*

72. On September 30, 2016, the ADL Chapter 1202 purchased Lot 117 in Oakshire, 3rd Plat in Johnson County, Missouri ("Lot 117") for approximately $43,000.

73. Lot 117 consists of 3.11 acres of undeveloped land.

74. The funds for the purchase of Lot 117 were withdrawn from the UMB ADL Account.

---

[2] The Defendant financed the 2005 purchase of the 4933 Westwood property with a mortgage secured by a deed of trust. The Defendant has disclosed and the property records confirm that the deed of trust is still recorded and has not been released. It is unknown if the Defendant obtained the permission of the creditor to attempt to transfer title to the property.

75. The source of the funds for the purchase of Lot 117 was the sale of the Defendant's California Property, which had closed about a month prior and which had been deposited into the UMB ADL account.

76. On June 20, 2017, the Defendant, in her personal name, granted a deed of trust secured by Lot 117 to Sasha Investments to partially secure a $101,000 loan used to redeem the 4937 Westwood Property.

77. On May 18, 2017, the Defendant acquired Lots 119 and 120 in Oakshire, 3rd Plat, in Johnson County, Missouri (respectively "Lot 119" and "Lot" and together "Lots 119 and 120"). Lot 120 consists of a residence with the address 781 NW 1621 Rd and 3.11 acres. Lot 119 consists of 3.11 acres of unimproved property.

78. The Defendant purchased Lots 119 and 120 in a single transaction for the price of $330,000. $180,000 of the purchase price was tendered by the Defendant with the cash then located in the freezer at 22nd and Brooklyn, which had been withdrawn from the UMB ADL account in August, 2016 and was traceable as proceeds of the sale of the Defendant's California property.

79. The remaining $150,000 was financed with a purchase money loan from creditor Sasha Investments, which is secured by a deed of trust on Lots 119 and 120. The Defendant is listed as the grantor on the deed of trust.

80. On July 7, 2017, approximately six weeks after purchasing Lots 119 and 120, the Defendant executed two quit claim deeds purporting to transfer Lots 119 and 120 to the ADL Chapter 1202. The deeds recite that ADL Chapter 1202 was "a Nonprofit Corporation duly organized under the laws of the State of Missouri." However, at the time of the execution of the deeds, ADL Chapter 1202 was not duly organized under the

laws of the State of Missouri, having been previously administratively dissolved which is true today.

81. The Defendant did not obtain consent of Sasha Investments to transfer the title of Lots 119 and 120.

82. The Defendant alleged at her deposition that she executed the quit claim deeds because she had instructed the title company closing the sale of Lots 119 and 120 to title the property in the name of ADL Chapter 1202 but the title company erred in preparing the deeds and the seller refused to delay the closing further.

83. At her deposition, the Defendant admitted that Lots 117, 119 and 120 all had significantly delinquent real property taxes and unpaid homeowners' associations dues at the time of the filing of the bankruptcy case.

84. The unpaid real property taxes and unpaid homeowners' associations dues are not disclosed in the Defendants Schedule D or Schedule F.

85. Recently, the Defendant may have paid, post-petition, the delinquent taxes and dues on Lot 117.  However, the Defendant admitted the taxes and dues on Lots 119 and 120 are still outstanding.  Subsequently, the Chapter 7 Trustee learned that Lots 119 and 120 might have been sold in a tax sale during the pendency of the Bankruptcy Case by Johnson County.

F.    *The Attempted Post-Petition Sale of Lot 117*

86. Following the commencement of the Bankruptcy Case, the Defendant retained a real estate agent and marketed Lot 117 for sale.

87. On November 12, 2019, the Defendant executed an electronic Seller's Disclosure of Condition of Property for Lot 117.

88. The Defendant did not obtain the permission of or notify either the Chapter 13 Trustee or this Court that she was attempting to sell Lot 117.

89. On April 19, 2020, the Defendant into a sales contract for the sale of Lot 119. The contract was subsequently amended on April 20, 2020, to clarify the contract was for the sale of Lot 117.

90. The sales contract, as amended, providing for the cash sale to close by April 30, 2020, which was just eleven days after the contract was executed.

91. The Defendant did not disclose to the buyer, her broker or the title company that the property was disclosed as a potential asset in this Bankruptcy Case and that the sale may be contingent upon the approval of this Court.

92. The Defendant did not disclose the lien of Sasha Investment on Lot 117 to either the buyer, the title company or agent.

93. At her deposition, the Defendant admitted she had no intention of applying the funds, if any, from the sale to pay her debts in this Bankruptcy Case. Rather, the Defendant intended to use the proceeds to pay the delinquent taxes and dues which were not disclosed in this case, and to pay other of her debts as they came due.

94. The sale of Lot 117 did not close because the title company discovered the Sasha Investments lien and Deed of Trust on April 29, 2020, the day before the sale was scheduled to close.

95. Sasha Investments refused to release its lien, and as a result, on May 4, 2020, the buyers cancelled the sales contract due to the Defendant's failure to meet the contractual closing conditions.

## COUNT I – SECTION 727(a)(4) - FALSE OATHS

96. Paragraphs 1-95 are incorporated by reference.

97. The Defendant has failed to correctly disclose numerous assets, debts and financial transactions on her schedules, statements and in her sworn testimony before the Chapter 13 Trustee's counsel at the Meeting of Creditors.

98. In her Initial Schedules, the Defendant omitted her ownership (through the ADL Chapter 1202) of Lot 117. While the Defendant disclosed her ownership of 781 NW 1621st Road, Bates City, the Defendant both knew and understood that such disclosure did not include Lot 117. The Defendant did not disclose her ownership and control of Lot 117 until the filing of her Amended Schedule A some ten months later.

99. In both her initial and amended Schedule A, the Defendant failed to disclose her ownership of a 1984 Mercedes Benz. In fact, the Defendant did not disclose her ownership of this vehicle until the second day of her deposition on July 2, 2020, when she was specifically questioned by counsel for Sasha Investments about vehicles that had been seen on the property.

100. The Defendant asserted that she did not list the vehicle because it was in disrepair. Nevertheless, by the time of the filing of her amended Schedule A, the Defendant had already been indicted for bankruptcy fraud relating to a prior case and was clearly and plainly aware of her need to disclose all property.

101. The Defendant's Schedule D contained the following omissions:
    a. Delinquent tax debts in favor of Johnson County on Lots 119 and 120 (the 781 NW 1621st Rd property) and on Lot 117 for which tax liens had been recorded.

    b. Delinquent homeowners' association dues to the Oakridge Homes Association on Lots 119 and 120 (the 781 NW 1621st Rd property) and on Lot 117 for which liens had been filed.

    c. That Sasha Investments had been granted a deed of trust with respect to Lot 117, and that deed of trust had been recorded within the preference period.

102. The Defendant's Statement of Financial Affairs, Question 18 contained the following omissions:

    a. That on June 20, 2017, the Defendant granted deeds of trust to Sasha Investments on both Lot 117 and 4937 Westwood.

    b. That on July 7, 2017, the Defendant transferred, by quit claim deed, Lots 119 and 120 (described on Schedule A as 781 NW 1621st Rd property) to ADL Chapter 1202.

103. The Defendant's Statement of Financial Affairs, Question 18 contained the following omissions:

    a. The October 20, 2014 transfer of 4937 Westwood to the Dille Family Trust.

    b. The December 15, 2014 transfer of 4933 Westwood to the Dille Family Trust.

104. The Defendant's Statement of Financial Affairs, Question 23 omitted the fact that Defendant was in possession of a vehicle which she alleges belongs to Gerald Sanders but which was in her control at the 781 NW 1621st Rd property and which remains there.

105. As provided in 28 U.S.C. § 1746, the Defendant's certifications on the Petition; the Schedules and the Statement of Financial Affairs have like force and effect as oaths.

106. At the meeting of creditors on February 26, 2019, the Defendant gave false sworn testimony.

107. Specifically, the Defendant testified that all of her assets and creditors were listed to the best of her knowledge, which was false, because the Defendant had omitted her ownership of Lot 117 through her alter ego, the ADL Chapter 1202, and numerous creditors and debts.

108. The Defendant was also asked "Within the four-year period prior to your petition date did you transfer or give any money, real property or personal property worth over $1,000?" The Defendant replied "No, I did not."

109. The Defendant failed to disclose in her sworn testimony at minimum the following transfers, giving of money, real property or personal property worth over $1,000 that occurred in the four years prior to November 20, 2018:

   a. The transfer of 4933 Westwood to the Dille Family Trust by Quit Claim Deed on December 15, 2014;

   b. The sale of the California Property in August of 2016;

   c. The transfer of the sale proceeds of the California Property to the ADL Chapel 1202 in August and September of 2016;

   d. The acquisition of Lots 119 and 120 in May, 2017, and their subsequent to transfer to the ADL Chapel 1202 on July 7, 2017.

   e. The redemption of the 4337 Westwood property from the receiver in June, 2017, which included the transfer of $80,000 in cash and the taking of a $101,000 loan from Sasha Investments.

110. The Defendant knew that at the time of each false oath, the statement was actually false, or was uttered or made with a reckless disregard for the truth of the matter asserted.

111. Each of the foregoing false oaths are independently sufficient to deny the Defendant's discharge.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of the Defendant under 11 U.S.C. § 727(a)(4) for having made a false oath or account in connection with the bankruptcy case, and for such further relief as may be just and proper.

**COUNT II – SECTION 727(a)(2) – PRE-PETITION FRAUDULENT TRANSFERS AND CONCEALMENTS**

112. Paragraphs 1-95 are incorporated by reference.

113. The Defendant fraudulently concealed her ownership of Lot 117 from her creditors and the Chapter 13 Trustee by failing to disclose the ownership of the Lot 117 for the first ten months of the bankruptcy case, including by failing to disclose her ownership of the property through the ADL Chapter 1202 on her Initial Bankruptcy Schedules filed after the commencement of the case.

114. The Defendant transferred Lots 119 and 120 within the one year prior to the filing of this case from her personal ownership to the ADL Chapter 1202.

115. Lots 117, Lots 119 and Lots 120 were property the Defendant controlled and were property of the Debtor prior to the filing of the Bankruptcy Case, and property of the estate after the filing of the Bankruptcy Case.

116. Under the circumstances, the concealment of Lot 117 and the transfers of Lots 119 and 120 were done with the intent to hinder, delay and defraud her creditors and an officer of the estate charged with custody of property, either within the one year period prior to filing the Bankruptcy Case, or after the petition was filed.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of the Defendant under 11 U.S.C. § 727(a)(2) for having made transfers of property within the

one year period prior to the commencement of the case with the intent to hinder, delay or defraud creditors, and for concealing property with the intent to hinder, delay or defraud creditors and the Chapter 13 Trustee, and for such further relief as may be just and proper.

Date:  November 20, 2020.

        Respectfully submitted,

        Daniel J. Casamatta
        ACTING UNITED STATES TRUSTEE

        BY:  /s/ Adam E. Miller
            Adam E. Miller, Mo. Bar #65429
            Office of the United States Trustee
            Charles Evans Whittaker Courthouse
            400 East 9th Street, Room 3440
            Kansas City, MO  64106
            (816) 512-1940
            (816) 512-1967 Telecopier
            adam.e.miller@usdoj.gov