## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF MISSOURI
## WESTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| CAROL LINDA DILLE | ) | |
| | ) | Case No. 18-42994-DRD7 |
| Debtor. | ) | |
| SASHA INVESTMENTS, LLC, | ) | |
| Plaintiff | ) | |
| | ) | |
| | ) | Adversary Case No. _____ |
| vs | ) | |
| | ) | |
| CAROL LINDA DILLE | ) | |
| Defendant. | ) | |

## CREDITOR SASHA INVESTMENTS, LLC'S COMPLAINT AND OBJECTION TO DISCHARGE PURSUANT TO SECTION 727(a)

Comes now Sasha Investments, LLC ("Sasha Investments"), a creditor herein, by and through its counsel of record and objects to the discharge of Carol Linda Dille ("Debtor" or "Defendant") in Chapter 7 pursuant to 11 U.S.C. §727(a) for the following reasons:

1. On November 20, 2018, Defendant commenced this case by filing a voluntary petition for relief pursuant to the provisions of Chapter 13 of Title 11, United States Code (the "Bankruptcy Code"). The bankruptcy case was filed in the Western District of Missouri, Western Division and assigned case number 18-42294 (the "Bankruptcy Case").

5. On March 18, 2020, the United States Trustee filed a motion to convert the Bankruptcy Case from Chapter 13 to Chapter 7 under Section 1307(c) of the Bankruptcy Code for reasons more fully set forth in such motion (Doc.#176).

6. The Bankruptcy Court held a combined hearing on the United States Trustee's motion to convert as well as confirmation of the Defendant's Chapter 13 plan on August 26, 2020 following which the parties submitted post-trial briefs.

8. On October 5, 2020, the Bankruptcy Court held a hearing in which it made its findings of fact and conclusions of law regarding the motion to convert and the confirmation hearing on the plan. For the reasons stated on the record, the Bankruptcy Court denied confirmation of the Defendant's plan and ordered the case converted to Chapter 7.

9. Subsequent to conversion to Chapter 7, Victor F. Weber was appointed as the Chapter 7 Trustee (the "Chapter 7 Trustee").

*Jurisdiction, Standing and Parties*

11. The District Court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334(a).

12. This Bankruptcy Court has authority to hear this matter under an order of reference from the United States District Court for the Western District of Missouri promulgated pursuant to 28 U.S.C. § 151.

13. Venue for this proceeding is proper in the Western District of Missouri pursuant to 28 U.S.C. § 1408 as the Defendant resides in and has principal assets in the Western District of Missouri and a pending main bankruptcy case exists in the Western District of Missouri.

14. This is a constitutionally core proceeding, and a statutorily core proceeding under 28 U.S.C. § 152(b)(2)(J) to which this Bankruptcy Court may render a final decision.

15. The Plaintiff is a creditor in the Chapter 7 case and has standing to bring this proceeding pursuant to Sections 727(c)(1) of the Bankruptcy Code.

18. The Defendant is the Debtor in the Bankruptcy Case and has consented to the jurisdiction of this court by voluntarily filing the Bankruptcy Case in the United States Bankruptcy Court for the Western District of Missouri.

19. This proceeding is timely filed pursuant to Fed. R. Bankr. P. 4004(a).

*Relevant Factual Allegations*

20. The Defendant entered a plea of guilty to two federal felony counts on January 31, 2020, before the Honorable Howard F. Sachs, Senior United States District Judge, in connection with the

case styled *United States v. Carol L. Dille,* Case No. 19-cr-00087 now pending in the United States District Court for the Western District of Missouri. Specifically, she pled guilty to one count of wire fraud, in violation of 18 U.S.C. § 1343, in connection with making false claims for her estranged spouse's social security income; and, one count of bankruptcy fraud in violation of 18 U.S.C. § 152, in connection with making false statements in a prior bankruptcy proceeding filed in this Court. A copy of the plea agreement was attached to the United States Trustee's motion to convert (Doc. #176) as *Exhibit 1* and is incorporated by reference.

21. The Defendant was sentenced by the District Court before the Honorable David Gregory Kays on November 6, 2020 to twenty-four months of incarceration, followed by thirty-six months of supervised release, restitution and a mandatory special assessment.

*A. The Alliance of Divine Love Chapter 1202*

22. The Alliance of Divine Love ("ADL") is an interfaith ministry that "trains and supports ministers to counsel, heal, teach and contribute to those in need and those seeking to awaken to their higher consciousness as they are divinely guided." *See* https://www.allianceofdivinelove.org/ (last visited July 25, 2020).

24. The ADL offers a ministerial program with the goal of ordaining ministers.

25. The Defendant has been an ordained minister of the ADL since at least 2000.

26. Sometime after her ordination, the ADL granted the Defendant permission to establish an ADL chapter in Kansas City, number 1202 (the "ADL Chapter 1202").

27. The Defendant first registered the ADL Chapter 1202 with the Missouri Secretary of State as a nonprofit corporation on January 16, 2004. The corporation was assigned registration number N00562913. The Defendant was the registered agent for ADL Chapter 1202 and signed the registration paperwork filed on January 16, 2004.

28. Registration number N00562913 was administratively dissolved and a windup order was issued on December 29, 2006.

29. The Defendant re-registered ADL Chapter 1202 with the Missouri Secretary of State as a nonprofit corporation on January 29, 2012, approximately five years after it was previously dissolved. The corporation was assigned registration number N01208527.

30. Registration N01208527 was administratively dissolved and a windup order was issued on December 18, 2013.

31. The Defendant took no affirmative steps to reinstate ADL Chapter 1202's corporate charter prior to the filing of these contested matters in March, 2020.

32. Despite the fact that ADL Chapter 1202 has been twice dissolved by the Secretary of State of Missouri, and the Defendant's clear and admitted knowledge of the dissolution and windup orders, the Defendant has continued to do business in the name of ADL Chapter 1202 since its administrative dissolution, contrary to the windup order.

33. There are no other members of the board of directors or officers of ADL Chapter 1202 except for the Defendant.

34. ADL Chapter 1202 is an alter ego of the Defendant .

*B. The Dille Family Revocable Trust*

35. The Dille Family Revocable Trust dated October 30, 2008 (the "Dille Family Trust") was created by the Defendant's mother Catherine Jane Dille, who was the grantor.

36. The Dille Family Trust instrument specifies that it is a spendthrift trust for the benefit of the grantor, the Defendant, and the Defendant's brother.

41. The trustee of the Dille Family Trust was Loren G. Rea.

42. The Dille Family Trust instrument specifies that the only property in the trust was 4605 Liberty Street, Kansas City, Missouri 64112 ("4605 Liberty").

43. Article III of the Dille Family Trust provides that the trustee was to distribute all property of the trust upon the death of Catherine Dille.

44. The Dille Family Trust contained a spendthrift provision in Article IV, paragraph B.

45. Catherine Dille died in May, 2011.

46. At the time of Catherine Dille's death, the only real property in the trust was 4605 Liberty.

47. No provision of the trust appears to permit the trust to acquire additional real property after the death of the grantor.

48. On March 30, 2014, the trustee distributed 4605 Liberty to the Defendant and her brother by a Trustee's Deed of Distribution. However, for unknown reasons, the deed was not recorded in Jackson County, Missouri until April 1, 2016.

49. At the time of the distribution on March 30, 2014 of the 4605 Liberty property, the Dille Family Trust dissolved as a matter of law.

*C. The Transfer of the Kansas City Properties*

50. For many years, the Defendant has owned at least one half of the property at 4933 Westwood Road ("4933 Westwood") in Kansas City, Missouri.

51. For many years, the Defendant has been the lawful owner of the property at 4937 Westwood Road ("4937 Westwood") in Kansas City, Missouri.

52. The 4937 Westwood property, the legal description of which is Lot 33 of the Westwood Park subdivision in Kansas City, was obtained by the Defendant in 1980.

53. The 4933 Westwood property, the legal description of which is Lot 34 of the Westwood Park subdivision in Kansas City, was obtained by the Defendant in 2005.

54. The 4937 Westwood property has been the subject of lengthy and significant litigation which has been reported on numerous local media outlets in Kansas City, including the Kansas City Star newspaper.

55. In 2013, the Westwood Homes Association commenced a state court action in the Circuit Court of Jackson County, asserting that the Defendant had permitted 4937 Westwood to become a public nuisance through failing to maintain the property in good condition.

56. Following a four-day bench trial, the Circuit Court entered partial judgment for the Westwood Home Association and appointed a receiver on October 31, 2014.

57. Following the conclusion of the bench trial but prior to the entry of the Circuit Court's judgment, the Defendant purported to transfer 4937 Westwood to the Dille Family Trust by quit claim dated October 20, 2014, and which was recorded by the Jackson County Recorder of Deed the same day as document 2014E0087203.

58. Nevertheless, the receiver abated the nuisance at 4937 Westwood, at the cost of approximately $185,000.

59. In June, 2017, the Defendant redeemed the 4937 Westwood property by paying the costs of the abatement and receivership action.

60. The Defendant paid approximately $85,000 in cash towards the redemption from the cash located in the freezer at $22_{nd}$ and Brooklyn, which had been withdrawn from the UMB ADL Account.

61. To finance the remainder of the redemption, the Defendant obtained a loan from Sasha Investments for $101,000.

62. As collateral for the $101,000 loan, the Defendant executed a deed of trust in favor of Sasha Investments on the 4937 Westwood property. The Defendant also executed a deed of trust in favor of Sasha Investments secured by the property described as Lot 117 in Oakshire, $3_{rd}$ Plat in Johnson County, Missouri, the purchase of which is described below, as collateral for this loan.

*E. The Purchase and Transfer of the Bates City Property, and Related Debts*

63. On September 30, 2016, the ADL Chapter 1202 purchased Lot 117 in Oakshire, $3_{rd}$ Plat in Johnson County, Missouri ("Lot 117") for approximately $43,000.

64. Lot 117 consists of 3.11 acres of undeveloped land.

65. The funds for the purchase of Lot 117 were withdrawn from the UMB ADL Account.

66. On June 20, 2017, the Defendant, in her personal name, granted a deed of trust secured by Lot 117 to Sasha Investments to partially secure a $101,000 loan used to redeem the 4937 Westwood.

## COUNT I –
## SECTION 727(a)(4) – INTENTIONAL FRAUD

67. Paragraphs 1-67 are incorporated herein by reference as if fully set forth.

68. In June, 2017, Defendant asked Sasha Investments to loan her money so that she could redeem the property at 4937 Westwood from the receiver appointed by the Circuit Court of Jackson County.

69. Sasha Investments agreed to loan Defendant $101,000 so that she could redeem the property at 4937 Westwood on the condition that it be granted a first priority deed of trust on the 4937 Westwood property and on Lot 117 which Defendant had purchased earlier.

70. Sasha Investments is in fact a company that primarily invests in its own real estate and not making loans to others.

71. Dille told Sasha Investments that she was able to prepare the promissory notes and the deeds of trust for the loans she asked Sasha Investments to make to her so that Sasha Investments could save the cost of hiring an attorney.

72. Sasha Investments agreed to allow Defendant to prepare the notes and deeds of trust for the loans.

73. Defendant represented to Sasha Investments that the 4937 Westwood property was owned by the Dille Family Trust but that the Trust could and would grant to Shasha Investments a first priority Deed of Trust on that property to secure the $101,000 loan to Dille personally.

74. Defendant represented to Sasha Investments that she personally owned Lot 117 and that she was willing and able to grant Shasha Investments a first priority Deed of Trust to secure the $101,000 loan to Dille personally.

75. Defendant prepared the Deed of Trust for the 4937 Westwood property naming the Dille Family Revocable Trust as the Grantor and having it signed by the former trustee of the Dille Family Revocable Trust, Lorean Rea, on June 20, 2017, despite the fact that the Trust had dissolved as a matter of law on March 30, 2014 as explained above.

76. Defendant also prepared the Deed of Trust for Lot 117 naming herself personally as the Grantor despite the fact that when she bought Lot 117, she had titled the property in the name of the Alliance of Divine Love, Chapel 1202.

77. Defendant persuaded Sasha Investments that Defendant was having to go to the Recorder of Deeds in Jackson County and Johnson County, Missouri on other business in the immediate future and that she would take care of recording the Deeds of Trust on 4937 Westwood and Lot 117 and pay the recording fee.

78. Sasha Investments was not a sophisticated real estate lender and had not obtained a title commitment as to either the 4937 Westwood or Lot 117 properties and agreed with Defendant not to use a title company to close the loan transaction.

79. Because Sasha Investments trusted Defendant, it agreed to let her record the Deeds of Trust rather than trying to get them recorded itself.

80. Defendant defaulted on her obligations owing to Sasha Investments under the terms of the $101,000 promissory note in July, 2018.

81. Sasha Investments engaged legal counsel to commence foreclosure on Lot 117 and 4937 Westwood in August, 2018.

82. Counsel for Sasha Investments discovered in late August, 2018 after obtaining title reports that the Deeds of Trust on Lot 117 and 4937 Westwood had not be recorded by the Defendant as Defendant had promised she would.

83. As a result, counsel for Sasha Investments on September 17, 2018 recorded with the appropriate Recorder of Deeds the Deeds of Trust for 4937 Westwood and Lot 117.

84. Sasha Investments learned from the title report that Defendant had titled Lot 117 in the name of the Alliance of Divine Love-Chapel 1202.

85. Sasha Investments relied to its detriment on Defendant to record the Deeds of Trust in June, 2017, as she had agreed she would do.

86. Sasha Investments relied to its detriment on Defendant to properly prepare the Deeds of Trust identifying the proper parties as the Grantors therein.

87. During the course of the discovery in the Defendant's Chapter 13 case, Sasha Investments learned that the Dille Family Revocable Trust was dissolved as a matter of law years prior to Defendant's arranging for the former Trustee to execute a Deed of Trust naming the Trust as the grantor on the 4937 Westwood property.

88. Defendant knowingly, intentionally and fraudulently induced Sasha Investments to loan her $101,000 using the misrepresentation that the Dille Family Revocable Trust was lawfully in title to the 4937 Westwood property and the Trustee was the rightfully and lawfully empowered party to grant to Sasha a first priority deed of trust on such property knowing that the Trust had been terminated and dissolved and a matter of law.

89. Defendant knowingly, intentionally and fraudulently induced Sasha Investments to loan her $101,000 using the misrepresentation that Defendant personally was the record owner of Lot 117 and that Defendant, in her individual capacity, could lawfully grant to Sasha Investments an enforceable first priority deed of trust on Lot 117.

90. Defendant knowingly, intentionally and fraudulently induced Sasha Investments with her promises to rely on her to record the Deeds of Trust on the 4937 Westwood and Lot 117 properties with the appropriate office of the Recorder of Deeds when Defendant had no intention, either at the time of the misrepresentations or at any time thereafter to record the Deeds of Trust.

91. Sasha Investments relied on the intentional and fraudulent misrepresentations of the Defendant to loan her $101,000 which Sasha Investments believed to be fully and properly secured with the above described Deeds of Trust.

92. As a result of Defendant's intentional, knowing and fraudulent conduct and misrepresentations, Sasha Investments has been damaged.

93. As a result of Defendant's intentional, knowing and fraudulent conduct, Defendant received money from Sasha Investments and wrongfully gained advantage as to Sasha Investments' not timely perfecting the security for its loan to Defendant.

WHEREFORE, Plaintiff requests the Court's order and judgment denying the discharge of the Defendant under 11 U.S.C. § 727(a)(4) for having knowingly and fraudulently induced Sasha Investments, LLC to loan Defendant money and to gain an advantage over Defendant Sasha by inducing Sasha rely on Defendant to record its Deeds of Trust in or in connection with the bankruptcy case, and for such further relief as may be just and proper.

Date: January 4, 2021.

Respectfully submitted,

HUNTER LAW GROUP, P.A.

By: */s/ Christine L. Schlomann*
Christine L. Schlomann Mo.#28749
1900 W. 75th St., Ste 120
Prairie Village, KS 66208
913-216-0058
Cls@HunterLawGroupPA.com
ATTORNEYS FOR SASHA INVESTMENTS, LLC